FILED

NORTHEASTERN DIVISION
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

01 JUL -5 PM 3:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

**DONNIE W. FRAZIER,**

**Plaintiff,**

**v.**

**LOUIS CALDERA, SECRETARY OF ARMY,**

**Defendant.**

**Case No.: CV-00-B-1705-S**

ENTERED
JUL 5 2001

## MEMORANDUM OPINION

Currently before the court is Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, filed by Louis Caldera, ("defendant" or "Caldera"), Secretary of the Army ("Army").[1] In his Complaint, plaintiff Donnie W. Frazier ("plaintiff" or "Frazier") asserts claims of disability discrimination pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 701,[2] and race-based discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-16(c);

---

[1] Plaintiff originally named both Caldera and the Army as defendants. (*See* Complaint ("Compl.") at ¶¶ 2-3.) By Order entered October 11, 2000, the court granted defendants' Motion to Dismiss the Department of the Army as a defendant, leaving Caldera, in his official capacity, as the sole defendant.

[2] Plaintiff lists the Americans with Disabilities Act ("ADA") as his first cause of action; however, he never cites to this statute. (Compl. at ¶¶ 17-21.) Moreover, the ADA specifically excludes claims against the United States. 42 U.S.C. § 12111(5)(B)(i). Plaintiff actually alleges that the claim is brought to vindicate his rights under 29 U.S.C. § 701, of the Rehabilitation Act. (Compl. at 1, unnumbered ¶ "Nature of the Case".) He has since conceded that he has no claim under the ADA and attempts to assert a claim under the Rehabilitation Act. (Response in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Br.") at 19.)

41

42 U.S.C. §§ 1981 and 1983; and the due process and equal protection clauses of the Fourteenth Amendment.[3] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion is due to be granted.

## I. FACTUAL SUMMARY

Plaintiff is an employee of the Army alleging race discrimination and disability discrimination arising out of his suspension from work for sixty days without pay. (Compl. at ¶¶ 20-21, 23-24.) In addition to plaintiff's claims regarding his suspension, which he properly raised in the administrative process preceding this lawsuit, plaintiff now attempts to raise claims of failure to accommodate a disability and hostile environment race discrimination. (*Id.* at ¶¶ 20, 26.)

Plaintiff is currently and was during the time period at issue in this case, an Equipment Clerk, GS-03, in the Mobile Equipment Maintenance Division ("EMD"), Directorate of Public Works ("DPW"), Anniston Army Depot ("ANAD"). (Compl. at ¶ 2; DX,[4] Deposition of Donnie W. Frazier ("Frazier Dep."), Ex. 3 at 1.) During the time period at issue, plaintiff's direct

---

[3] Although plaintiff referenced the Fourteenth Amendment in his Complaint, (*see id.* at ¶ I), which applies to the states, the court assumes that he meant to assert a Fifth Amendment due process claim, which applies to the federal government.

[4] Defendant filed a Submission of Evidence in Support of Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment on February 23, 2001. The evidence contained in this submission will be referred to as "DX," followed by a description of the evidentiary material. Defendant also filed Defendant's Submission of Bankruptcy Records, which will be referred to throughout this Memorandum Opinion as "Bankr. Rec.," followed by the corresponding tab number. Plaintiff filed a Submission of Evidence in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment on March 16, 2001. The evidence contained in this submission will be referred to as "PX," followed by the corresponding tab number.

supervisor was Richard Ferguson ("Ferguson"), Chief of the EMD, DPW. (DX, Frazier Dep., Ex. 3 at 2; DX, Transcript of Fact Finding Conference before Department of Defense Office of Complaints Investigations ("OCI Trans.") at 120.) Plaintiff's second line supervisor was Gregory L. Reeves ("Reeves"), Director, DPW. (DX, OCI Trans. at 72.)

Prior to his current position, plaintiff was a Supply Clerk, GS-04. (DX, Declaration of Nancy Hutcheson ("Hutcheson Decl.") at ¶ 1 and Tab A attached thereto.) In March 1990, due to a work-related injury, plaintiff was disqualified from his previous position and reassigned as a Supply Clerk, GS-03. (*Id.* at ¶¶ 1-2.) When defendant decided to abolish that position in a reorganization, plaintiff was designated as one of four candidates[5] for selection to an Equipment Clerk position in EMD, DPW. (*Id.* at ¶ 2 and Tab B attached thereto.) Effective November 23, 1997, Ferguson selected plaintiff over the other three candidates for the position. (*Id.*; *see also* DX, Frazier Dep. at 62.)

As of December 23, 1997, due to his prior injury, plaintiff had the following physical restrictions, as approved by the ANAD health clinic: no lifting over 25 pounds; no lifting above chest level; no climbing, jumping, squatting, stooping, or bending at the knee or hip; and no sitting more than 30 minutes. (DX, Frazier Dep., Ex. 1 at Plaintiff's Response to Interrogatory ("Interrog.") #2.)

On January 14, 1998, plaintiff filed a claim for workers' compensation benefits, claiming that he had been injured at work on December 23, 1997, when he was "sweeping & emptying trash can [sic]." (DX, Frazier Dep., Ex. 2.) His supervisor, Ferguson, denied any knowledge of

[5] The other candidates included two white males and one white female. (DX, Hutcheson Decl. at ¶ 2.)

the alleged injury. (*Id.*) During a subsequent investigation conducted by the ANAD workers' compensation investigator, plaintiff claimed that, despite his limitations, Ferguson had instructed him to sweep and empty trash cans. (DX, Frazier Dep. at 21-23 and Ex. 1 at Plaintiff's Response to Request for Admission ("Req. Admis.") #13.) Ferguson denies giving plaintiff such an instruction. (DX, OCI Trans. at 123-24.)

On February 2, 1998, Ferguson agreed to send plaintiff to the health clinic for a review of his restrictions. (DX, Frazier Dep., Ex. 1 at Req. Admis. #16-18.) Ferguson provided plaintiff with an official clinic pass, requesting that the clinic conduct a "follow up" of his restrictions. (*Id.* at Req. Admis. #19-20.) When plaintiff returned from the clinic, he handed Ferguson a different clinic pass than the one Ferguson had issued to him, which stated a different reason for the clinic visit. (*Id.* at Req. Admis. #22.)

Ferguson claims that plaintiff also showed him a copy of the original pass, which had not been filled out by the clinic; this indicated to Ferguson that plaintiff had falsified a new pass. (DX, OCI Trans. at 124-126.) Plaintiff claims that he lost the original pass, and that Union Representative Ray Van Schoubroeck later found the pass on May 5, 1998, in the safety office. (DX, Frazier Dep., Ex. 1 at Interrog. #1.)

In response to the two incidents described above, Ferguson offered an "Alternative to Traditional Discipline" ("ATD") agreement, by which plaintiff would receive a twenty-day suspension with no loss of pay or duty time. (DX, Declaration of Mary B. Mullen ("Mullen Decl.") at ¶ 8 and Tab C attached thereto.) On May 14, 1998, plaintiff rejected the ATD offer. (*Id.* at ¶ 8; DX, Frazier Dep., Ex. 1 at Req. Admis. #11.)

On May 15, 1998, Ferguson sent a memorandum to plaintiff regarding a proposed suspension for sixty workdays for "making a false statement in connection with a claim for compensation benefits and misrepresentation of facts." (DX, Frazier Dep., Ex. 3 at ¶ 1; DX, Mullen Decl. at ¶ 8.) The "false statement" pertained to plaintiff's statement to the workers' compensation investigator that Ferguson had instructed him to sweep the floors and empty the trash. (DX, Frazier Dep. Ex. 3 at ¶ 2a.) Specifically, the memorandum stated:

> On 21 January 1998, you were interviewed by the Compensation Investigator, Mr. Ronald L. Norris Sr., regarding your 14 January 1998 compensation claim. During that interview, you stated that on 23 December 1997, I told you to clean up the office and that those activities violated your medical restrictions. This is a false statement in that I never directed you to clean up the office.

(*Id.* at ¶ 2a.) The "misrepresentation of facts" pertained to the clinic pass incident. (*Id.* at ¶ 2b.) Specifically, the memorandum stated:

> On 2 February 1998, you informed me that your physician had advised you that you needed a job change. You could not, however, provide me with any medical documentation that supported the need for this change. We discussed your current medical restrictions and I told you I was sending you to the Health Clinic for a review of your restrictions. I sent you to the Health Clinic with a clinic pass requesting a follow up of your medical restrictions. I signed this form dated 2 February 1998 and gave it to you to present to the Clinic. When you returned to my office after your clinic visit, you gave me a different clinic pass that you had filled out which stated a different reason for your visit. When I asked you where my original clinic pass was, you handed it to me. It had not been completed by the Health Clinic. You misrepresented to the [C]linic my reason for sending you there for evaluation.

(*Id.* at ¶ 2b.) The memorandum also notified plaintiff of his rights to representation and to reply to the proposed action orally or in writing to Reeves. (*See id.* at ¶¶ 5-6.)

Prior to approving the proposed suspension, Reeves offered plaintiff another ATD agreement, whereby plaintiff would receive only a ten-day suspension. (DX, OCI Trans. at 84; *see also* DX, Frazier Dep. at 35-36.) Plaintiff initially indicated that he would accept the offer,

but later declined to accept it. (*See* DX, OCI Trans. at 84.) On June 24, 1998, Reeves approved the sixty-day suspension. (*See* DX, Frazier Dep., Ex. 4 at ¶ 2.) Reeves noted that he based his decision on the totality of the evidence, including plaintiff's oral replies to the charges, and that he found the charges were supported by a preponderance of evidence. (*Id.* at ¶¶ 2, 3.)

On August 20, 1998, plaintiff filed a formal administrative EEO complaint, in which he stated "that he [was] a victim of discrimination on the basis of race (black), sex (male), age (44), handicap (physical), and reprisal . . . in that he received a 60-day suspension for making a false statement in connection with a claim for compensation and misrepresentation of facts." (DX, Frazier Dep., Ex. 1 at Req. Admis. #3; *see also id.* at #3; DX, Frazier Dep., Ex. 5; DX, Frazier Dep., Ex. 7.) On February 9, 1999, an investigator from the Department of Defense Office of Complaints Investigations ("OCI") conducted a fact finding conference to investigate plaintiff's claim. (*See* DX, OCI Trans. at 1-6.) On May 18, 2000, following the recommendations of the OCI investigator, the Army issued a final agency decision on the matter. (Compl. at ¶ 16.) The Army amended its final determination on June 1, 2000. (*Id.*)

On May 12, 2000, plaintiff filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 301. (Bankr. Rec. 1.)[6] The pertinent chronology of plaintiff's bankruptcy proceedings, in conjunction with his discrimination claims, is as follows:

| | |
|---|---|
| June 24, 1998: | Plaintiff received the final decision on his suspension. (DX, Frazier Dep., Ex. 4.) |

---

[6] The court notes that the debtor in the bankruptcy proceeding is referred to as Donnie Ned Frazier, but the style of this case as well as the majority of documents filed in this case refer to plaintiff as Donnie W. Frazier. However, some documents in this case refer to plaintiff as Donnie Ned Frazier. (*See* Plaintiff's Initial Disclosures filed October 13, 2000.) Further, there is no dispute that the plaintiff in this case and the debtor in the bankruptcy proceeding are one and the same.

| | |
|---|---|
| August 7, 1998: | Plaintiff sought EEO counseling for the allegedly discriminatory suspension. (*Id.* at Ex. 6.) |
| August 20, 1998: | Plaintiff filed a formal administrative complaint. (DX, Frazier Dep., Ex. 1 at Req. Admis. #3; *see also id.* at #3; DX, Frazier Dep., Ex. 5; DX, Frazier Dep., Ex. 7.) |
| May 12, 2000: | Plaintiff filed a petition under Chapter 13 of the Bankruptcy Code and submitted a detailed schedule of assets, but did not include his administrative complaint of discrimination. (Bankr. Rec. 1.) |
| May 18, 2000: | The Army issued a Final Agency Decision on plaintiff's administrative complaint of discrimination. (Compl. at ¶ 16.)[7] |
| June 21, 2000: | Plaintiff filed the present civil action. (*See* Compl.) |
| September 25, 2000: | Plaintiff amended his schedule of assets, but did not include his judicial complaint of discrimination. (Bankr. Rec. 13.) |
| November 27, 2000: | The Bankruptcy Court confirmed plaintiff's Chapter 13 plan. (Bankr. Rec. 26.) |

On June 28, 2000, plaintiff's doctor, Dr. C. H. McCrimmon, M.D., approved a release for plaintiff to work under no physical limitations. (DX, Frazier Dep. at 13 and Ex. 1 attached thereto at Req. Admis. #10.)

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in

[7] The Army amended the Final Agency Decision on June 1, 2000. (Compl. at ¶ 16.)

support of some element of his case on which he bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23; *see* FED. R. CIV. P. 56 (a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)(citations omitted). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## III. DISCUSSION

### A. Judicial Estoppel

As noted above, plaintiff filed a petition for bankruptcy on May 12, 2000, and thereafter filed the present civil action on June 21, 2000. (*See* Bankr. Rec. 1; Compl.) The Bankruptcy Court subsequently confirmed plaintiff's Chapter 13 plan on November 27, 2000. (*See* Bankr. Rec. 26.)

Judicial estoppel "precludes a party from assuming a position in a legal proceeding inconsistent with one previously asserted when [the] inconsistency would allow the party to 'play fast and loose with the courts.'" *Chandler v. Samford University*, 35 F. Supp. 2d 861, 863 (N.D. Ala. 1999) (citations omitted). The policy underlying judicial estoppel, at least in the context of bankruptcy proceedings, was set out by the United States Supreme Court in 1905:

> It cannot be that a bankrupt, by omitting to schedule and withholding from his trustee all knowledge of certain property, can, after his estate in bankruptcy has been finally closed up, immediately thereafter assert title to the property on the ground that the trustee had never taken any action in respect to it. If the claim was of value. . . , it was something to which the creditors were entitled, and this bankrupt could not, by withholding knowledge of its existence, obtain a release from his debts, and still assert title to the property.

*First National Bank of Jacksboro v. Lasater*, 196 U.S. 115, 119 (1905).

Plaintiff argues:

> It is clear that the applicability of the doctrine of Judicial Estoppel varies widely from district to district, circuit to circuit and state to state. There are no hard and fast rules for any party to apply in any given case. The applicability of this doctrine must be determined on a case-by-case basis. This court should keep in mind that the Plaintiff, Frazier, has filed a chapter 13 bankruptcy petition, which has different ramifications in applying the judicial estoppel doctrine.

(Pl.'s Br. at 7.) Plaintiff further contends that he should not be judicially estopped from asserting this cause of action because "it cannot be shown that Frazier intentionally misled the bankruptcy

court to gain any unfair advantage," defendant "has not relied on such omission since he was not a party to the bankruptcy,"[8] defendant "has not proven any prejudice to them when the Plaintiff did not disclose this case in the bankruptcy petition," and "the purpose of the doctrine of judicial estoppel will not be accomplished, but, rather, will be frustrated if defendants are allowed to use this doctrine to their advantage at the expense of the plaintiff's valid claims." (Pl.'s Br. at 9-10 (citations and quotations omitted).) Defendant argues:

> [B]y not disclosing the discrimination claims but pursuing them on his own as he is doing, Mr. Frazier could keep any settlement or judgement for himself and conceal any recovery from his creditors, the Chapter 13 trustee, and the Bankruptcy Court. The undisputed timing in this case indicates that Mr. Frazier had knowledge of his discrimination claims for over two years yet did not disclose them. Mr. Frazier should be judicially estopped from bringing his employment discrimination claims.

(Memorandum in Support of Defendant's Motion to Dismiss Or, In the Alternative, for Summary Judgment ("Def.'s Br.") at 12.)

Many courts have held that failure to disclose potential causes of action equitably and/or judicially estops the debtor from subsequently pursuing those causes of action. *See, e.g., Beckwith v. BellSouth Telecommunications*, CV-00-J-97-NW, at 7-9 (N.D. Ala. Feb. 16, 2001) (unpublished opinion) (finding that where plaintiff filed a Chapter 13 bankruptcy petition on December 29, 1998, and a discrimination civil action on January 10, 2000, plaintiff's discrimination claims accrued either before or no later than two months after the filing of the bankruptcy petition, and concluding that plaintiff's claims were barred by judicial estoppel because even a plea that the plaintiff had no intent to deceive was to no avail as her bankruptcy

---

[8] This argument is without merit because "[t]he doctrine of [judicial estoppel] is applicable [even if] the party asserting it was not involved in the earlier proceeding." *Bregman v. Alderman,* 955 F.2d 660, 664 n.3 (11th Cir. 1992) (removal of equitable accounting action).

schedules clearly failed to identify any pending administrative proceedings and the plaintiff had demonstrated herself to be competent, even when proceeding *pro se* at times); *Chandler,* 35 F. Supp. 2d at 865 ("Having joined courts of other jurisdictions in recognizing judicial estoppel as a bar to a debtor's assertion of claims not disclosed in an earlier bankruptcy proceeding when the later assertion is both inconsistent with the debtor's representations to the bankruptcy court and a deliberate manipulation of the judicial system, this court finds that [plaintiff] has presented no genuine issue of material fact to preclude the entry of summary judgment in [defendant's] favor."); *In re Tippins*, 221 B.R. 11, 13, 26-27 (Bankr. N.D. Ala. 1998) (holding that judicial estoppel barred the debtors' claim against one creditor because the debtors were aware of their causes of action against this creditor when their plan was confirmed, yet chose not to list them in their schedules or to inform their creditors, the Chapter 13 trustee, or the court, and finding that the debtors' belated attempt to amend their schedules was meaningless for judicial estoppel purposes, since it occurred after their Chapter 13 plan was confirmed); *Harper v. GMAC Mortgage Corp.,* 538 S.E. 2d 816, 817-19 (Ga. 2000) (holding that, in light of the strict reporting requirements for Chapter 13 bankruptcy petitions, the failure to disclose an asset in the form of a pending tort claim in the bankruptcy schedule amounted to a denial that such an asset exists and subsequent efforts to pursue the tort claim in state court were barred by judicial estoppel.).

The court agrees with the line of cases recognizing the doctrine of judicial estoppel as a bar to a debtor's assertion of a claim not identified as an asset in an earlier bankruptcy proceeding. As the court noted in *Chandler*, "[t]he applicability of the doctrine of judicial estoppel . . . requires a determination that (1) the positions asserted are in fact inconsistent, and (2) the inconsistency would allow a party to benefit from a deliberate manipulation of the

courts." *Chandler,* 35 F. Supp. 2d at 863. The second prong of the analysis may be evidenced by a party's knowledge of the claim and motive for concealment in the face of the affirmative duty to disclose the claim. *Id.* at 864. Here, plaintiff had knowledge of his claims against defendant before and during the pendency of the Chapter 13 proceedings.[9] Further, plaintiff had an affirmative duty to disclose his claim against defendant. A Chapter 13 debtor has a duty to disclose all interests in property the estate acquires after the commencement of the estate. *See* 11 U.S.C. § 541(a)(7). Despite this affirmative duty, plaintiff chose not to amend his schedule during the approximate six months between the filing of his civil action and the confirmation of his Chapter 13 plan.[10] Further, plaintiff had an apparent motive for concealing his claims in that by not disclosing the discrimination claims, plaintiff could keep any settlement or judgment for himself and conceal any recovery from his creditors, the Chapter 13 Trustee, and the bankruptcy court. The court notes that plaintiff has offered no explanation for failing to disclose his discrimination claims to the bankruptcy court. Instead, plaintiff merely argues that he has gained no unfair advantage. (*See* Pl.'s Br. at 9-10.) The court is unpersuaded by this argument inasmuch as plaintiff's bankruptcy plan, which provides for the full payment of debts over an

---

[9] As noted above, plaintiff received the final decision regarding his suspension on June 24, 1998. (DX, Frazier Dep., Ex. 4.) Plaintiff then filed a formal administrative EEO complaint alleging illegal retaliation and discrimination on the basis of race, sex, age, and disability. (DX, Frazier Dep., Ex. 1 at Req. Admis. #3; *see also id.* at #3; DX, Frazier Dep., Ex. 5; DX, Frazier Dep., Ex. 7.) This was more than a year and a half before plaintiff filed his petition for Chapter 13 Bankruptcy on May 12, 2000. (*See* Bankr. Rec. 1.) Further, plaintiff received the Final Agency Decision regarding his administrative complaint on May 18, 2000, six days after filing his bankruptcy petition, and he filed the present action on June 21, 2000, a little over a month after filing his bankruptcy petition. (*See* Compl. at ¶ 16; Bankr. Rec. 1.)

[10] The Bankruptcy Court confirmed plaintiff's Chapter 13 plan on November 27, 2000. (Bankr. Rec. 26.)

approximate fifty months, with interest due only to his secured creditors and no interest due his unsecured creditors, was reached without the trustee, the creditors, or the bankruptcy court having knowledge of plaintiff's employment discrimination claims. (*See* Bankr. Rec. 24.) The court is of the opinion that plaintiff's representations to this court are inconsistent with those he made to the bankruptcy court, and that such representations constitute a deliberate manipulation of the judicial system. Thus, the court is of the opinion that plaintiff is judicially estopped from pursuing this civil action because he failed to disclose the claims made the basis of this suit in his petition for bankruptcy.[11] Consequently, plaintiff's claims are due to be dismissed.

**B. Substantive Claims**

Even if plaintiff had disclosed the claims made the basis of this civil action in the bankruptcy proceedings, defendant would still be entitled to judgment as a matter of law as to these claims.

***1. Constitutional Claims***

Plaintiff mentioned a due process violation in his Complaint, but did not assert a separate cause of action for such claim. (*See* Compl. at ¶¶ 1, 23.) As noted above, although plaintiff referenced the Fourteenth Amendment in his Complaint, (*see id.* at ¶ I), which applies to the

---

[11] The primary case upon which plaintiff relies regarding his assertion that judicial estoppel is inappropriate, *Sumner v. Michelin N.A., Inc.*, 966 F. Supp. 1567 (S.D. Ala. 1997), (*see* Pl.'s Br. at 8), did not involve a bankruptcy proceeding at all. The issue in *Summer* was whether a former employee was judicially estopped from maintaining an ADA claim after representing that he was totally and permanently disabled in claims for workers' compensation and Social Security benefits. *Sumner*, 966 F. Supp. at 1569-82. In *Cleveland v. Policy Mgt. Sys. Corp.*, 526 U.S. 795, 800 (1999), the United States Supreme Court held that, when faced with a plaintiff's previous sworn statement asserting total disability, a court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. *Id.* at 805-07.

states, the court assumes that he meant to assert a Fifth Amendment due process claim, which apples to the federal government. Nevertheless, the United States Supreme Court and the Court of Appeals for the Eleventh Circuit have repeatedly held that, in the federal employer-employee context, the remedies provided in the Civil Service Reform Act ("CSRA"), which encompass the provisions of Title VII, are the exclusive remedies for violations of federal employment rights and privileges, and the CSRA preempts any additional cause of action other than those permitted by Congress. *See United States v. Fausto*, 484 U.S. 439, 443-51, 455 (1988); *Brown v. General Services Administration*, 425 U.S. 820, 828-835 (1976); *Stephens v. Dep't of Health and Human Services*, 901 F.2d 1571, 1575 (11th Cir. 1990); *Broughton v. Courtney*, 861 F.2d 639, 641-44 (11th Cir. 1988). This comprehensive scheme supersedes any independent judicial remedy. *See Fausto,* 484 U.S. at 448-49; *Ferry v. Hayden*, 954 F.2d 658, 661 (11th Cir. 1992).

Under the CSRA, federal employees may seek relief for constitutional violations. *See Delgado v. Sawyer,* No. 01-1460-CIV-MORENO, 2001 WL 483993, at *2 (S.D. Fla. April 30, 2001) (citing *Stephens*, 901 F.2d 1571; *Hallock v. Moses*, 731 F.2d 754 (11th Cir. 1984)). The CSRA proscribes, *inter alia*, a "personnel action" that violates "any law, rule, or regulation implementing, or directly concerning, the merit system principles." 5 U.S.C. § 2302(b)(12). One such merit systems principle provides that "[a]ll employees and applicants for employment should receive fair and equitable treatment. . . with proper regard for their . . . constitutional rights." 5 U.S.C. § 2301(b)(2). Thus, a plaintiff's exclusive remedy for constitutional claims is the CSRA, *see Ferry*, 954 F.2d at 661; *Stephens*, 901 F.2d at 1576; *Hallock*, 731 F.2d at 757-58, and plaintiff's claims under the Fifth Amendment are due to be dismissed.

### 2. *§§ 1981 and 1983 Claims*

Similarly, plaintiff's claims under 42 U.S.C. §§ 1981 and 1983 are due to be dismissed. The United States Court of Appeals for the Eleventh Circuit has held: "Section 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but does not provide a cause of action for discrimination under color of federal law." *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998). Likewise, § 1983 only addresses deprivations by persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *See* 42 U.S.C. § 1983. Plaintiff is a federal employee, and the alleged actors here are federal employees, not state employees. Thus, there was absolutely no state action involved in this case and plaintiff's claims under §§ 1981 and 1983 are due to be dismissed.

### 3. *Title VII and Rehabilitation Act Claims*

#### a. Exhaustion of Remedies

Plaintiff's first cause of action asserts a claim under the Rehabilitation Act [12] and alleges that "the actions of Supervisor Ferguson were motivated by his desire to eliminate persons with qualified disabilities, and particularly, black disabled employees." (Compl. at ¶ 18.) Plaintiff further alleges that "Ferguson intentionally did not accommodate [Frazier],[13] by insisting he perform tasks that he knew Frazier could not perform or was instructed by his Doctor not to

---

[12] As noted above, although plaintiff titled this an ADA claim, he has since conceded that he has no claim under the ADA and instead asserts a claim under the Rehabilitation Act. (*See* Pl.'s Br. at 19.)

[13] The Complaint actually states that "Ferguson intentionally did not accommodate *Jacobs*." (Compl. at ¶ 20) (emphasis added.) However, the court assumes that plaintiff meant to refer to himself.

perform." (*Id.* at ¶ 20.) Plaintiff's second cause of action asserts a claim of race discrimination under Title VII in that he was wrongfully suspended without pay for sixty days. (*See* Compl. at ¶¶ 23-25.) Plaintiff further contends:

> [Plaintiff] is qualified to perform his duties within the limitations for which he has been accommodated. Yet, he was constantly harassed and humiliated by his white supervisor for any errors in his work, however minor, and required to perform duties which were outside the limitation[s] of the specific physical requirements for which he was accommodated. No white persons supervised by Ferguson were treated in the same way as [plaintiff].

(Compl. at ¶ 26.)

Exhaustion of administrative remedies is a prerequisite for federal employees filing discrimination claims. *Brown*, 425 U.S. at 832; *Grier v. Secretary of the Army*, 799 F.2d 721, 724 (11th Cir. 1986). Administrative exhaustion "is not a technicality." *Grier,* 799 F.2d at 424. The federal sector provision of Title VII created "a dispute resolution system that requires a complaining party to pursue administrative relief prior to court action, thereby encouraging quicker, less formal, and less expensive resolution of disputes within the Federal Government and outside of court." *West v. Gibson*, 527 U.S. 212, 218-19 (1999). However, a plaintiff's charge filed with the EEOC need not be identical to the subsequently filed judicial action. *See Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989); *Liberti v. Walt Disney World Co.*, 912 F.Supp. 1494, 1502 (M.D. Fla. 1995). The Eleventh Circuit has addressed cases in which there are differences existing in the EEOC charge and a plaintiff's resulting judicial complaint and has stated:

> As long as the allegations in the judicial complaint and proof are "reasonably related" to charges in the administrative filing and "no material differences" between them exist, the court will entertain them. As we have noted . . . , "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of

> discrimination." Judicial claims which serve to amplify, clarify, or more clearly focus earlier EEO complaints are appropriate. Allegations of new acts of discrimination, offered as the essential basis for the requested judicial review are not appropriate.

*Wu*, 863 F.2d at 1547 (citations omitted).

Plaintiff exhausted his administrative remedies only as to one claim, the alleged discrimination in his sixty-day suspension. His newly raised claims of hostile environment race discrimination and failure to accommodate are not reasonably within the scope of the investigation of a sixty-day suspension. *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985) ("Plaintiff's administrative complaint charged racial discrimination in that 'qualified blacks were and are still being systematically excluded in training and development and opportunities for advancements.' We hold that [plaintiff's] complaint clearly challenged aspects of defendant's employment practices which would reasonably include testing. The written examinations were an integral part of the promotional scheme . . . because employees became eligible for promotion to supervisory positions only by attaining a passing score on the examination. Thus, the impact of the written tests should have been encompassed in a reasonable investigation of this charge of systemic discrimination in promotions."); *Liberti,* 912 F. Supp. at 1502-03 ("The Court finds, in particular, that the source of the video camera allegedly used in the covert peeping operation and the identity of the individual(s) to whom the tapes were displayed is reasonably related to the scope of the investigation which could reasonably be expected to grow out of the discrimination charge. However, the allegations of improper touching are of an entirely different nature, although the impropriety of the alleged touching could be perceived as magnified because of defendant's participation in the peeping activities. The Court finds that the allegations that defendant improperly touched all or some of the Plaintiffs while serving as their costumer do not

amplify, clarify, or more clearly focus the Plaintiffs' earlier EEO complaints, and they would not be reasonably expected to grow out of the discrimination charge. The Plaintiffs have therefore failed to exhaust their administrative remedies as to this aspect of their claim."). Thus, defendant is entitled to judgment as a matter of law on plaintiff's hostile environment and failure to accommodate claims due to plaintiff's failure to exhaust his administrative remedies.

b. Discriminatory Suspension Claim

With regard to the timely exhausted discriminatory suspension claim, plaintiff has failed to establish a prima facie case. In any action alleging disparate treatment by an employer, the plaintiff must prove that the employer acted with a discriminatory motive. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n.15 (1977). To establish a prima facie case of discrimination, a plaintiff may employ direct evidence of discriminatory intent, statistical proof of a pattern of discrimination, or circumstantial evidence. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989). The evaluation of a plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.[14] A plaintiff may rely on circumstantial evidence to support his claims, and in such case the court is governed by the familiar, tripartite framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997) (clarifying the standard to be applied under Eleventh Circuit jurisprudence). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53.

---

[14] In the present case, the record contains no direct evidence of discrimination.

"The facts necessarily will vary in [discrimination] cases, and the specification . . . of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas,* 411 U.S. at 802 n.13.

If the plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate a legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. Defendant's burden to rebut the presumption created in such a situation is one of production rather than proof, requiring defendant to articulate a legitimate, nondiscriminatory reason for its action. *Burdine*, 450 U.S. at 257-58. In satisfying this burden:

> [t]he employer's burden of rebuttal is "exceedingly light." Since the rebuttal burden is one of production only, the employer "need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the [employer's] evidence raises a genuine issue of fact as to whether it discriminated against the [employee]."

*Tipton v. Canadian Imperial Bank of Commerce,* 872 F.2d 1491, 1495 (11th Cir. 1989) (quoting *Burdine,* 450 U.S. at 254-55) (alterations in original).

If the defendant succeeds in carrying this burden, then any "presumption of discrimination created by the *McDonnell Douglas* framework drops from the case, and the factual inquiry proceeds to a new level of specificity." *Combs,* 106 F.3d at 1528 (quotation omitted). The plaintiff must then prove that the defendant's articulated reasons are a mere pretext for unlawful motives. *Id.* A plaintiff's prima facie case coupled with sufficient evidence to allow a fact finder to disbelieve the employer's proffered explanation for its actions is enough to preclude entry of judgment as a matter of law. *Id.* at 1529; *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207 (11th Cir. 1997). At all times, the plaintiff bears the burden of persuasion on the

ultimate question of whether the defendant acted with an unlawful motive. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

To avoid summary judgment, a plaintiff must submit sufficient nonconclusory evidence that defendant's articulated legitimate reasons for the employment decisions were pretextual. *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471-72 (11th Cir 1991); *Carter v. City of Miami*, 870 F.2d 578, 585 (11th Cir. 1989). Plaintiff must put forth concrete evidence that casts sufficient doubt on defendant's proffered reasons such that a reasonable fact finder would conclude that those reasons did not actually motivate the employment decisions. *See Combs*, 106 F.3d at 1538; *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1083-84 (11th Cir. 1990).

*i. Discrimination Based On Race*

Plaintiff alleges that "other white employees of the Army, specifically the Army Depot, . . . were disciplined more favorably for comparable or worse conduct than [plaintiff]." (Pl's Br. at 13.) In order to establish a prima facie case of discriminatory discipline, plaintiff must demonstrate: (1) that he belongs to a protected class under Title VII; (2) that he was qualified for the job; and (3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline. *Alexander v. Fulton County, Georgia,* 207 F.3d 1303, 1336 (11th Cir. 2000) (citing *Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 792 (11th Cir.1999); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997)). After reviewing the evidence, the court is of the opinion that plaintiff has failed to identify any similarly situated comparator and, thus, has failed to establish a prima facie case. *See Holifield,* 115 F.3d at 1562 ("To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that he and the employees are similarly situated in all relevant respects. . . .

In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways. . . . If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present.") (citation omitted).

However, even assuming that plaintiff could establish a prima facie case of race discrimination, defendant has articulated a legitimate, nondiscriminatory reason for its disciplinary action. Defendant asserts:

> A serious charge led to the suspension: making a false statement in connection with a claim for compensation benefits and misrepresentation of facts. . . . The prescribed penalties for these charges ranged from written reprimand to removal, with the specific notation that "[r]emoval is warranted for a first offense" of making a false statement. . . . Two managers were involved in the decision: Mr. Ferguson, who proposed the suspension, and Mr. Reeves, who made the final decision on the suspension.

(Def.'s Br. at 17) (citations to the evidence omitted.) Further, defendant asserts:

> Mr. Reeves also testified that he believed the amount of 60 suspension days was reasonable based upon his discussion with Personnel Management Specialist Mary Mullen. . . . Ms. Mullen advised Mr. Reeves that a 60-day suspension was appropriate considering the other disciplinary actions being taken throughout the Anniston Army Depot. . . . She provided a perspective on comparable actions both across the Depot at large and within the directorate. . . . Mr. Reeves relied upon this information from Ms. Mullen, along with the Army's Table of Penalties, in reaching his decision.

(*Id.* at 21) (citations to the evidence omitted.)

Plaintiff has offered no evidence to show that defendant's articulated reasons are a mere pretext for unlawful motives. Plaintiff has failed to provide any evidence indicating that the actions of either Ferguson, who proposed the suspension, or Reeves, the deciding official, were

based upon race. The facts set forth regarding plaintiff's suspension are essentially undisputed.[15] Ferguson and Reaves disciplined plaintiff based on their belief that plaintiff made false statements to the workers' compensation investigator and misrepresented facts when Ferguson sent him to the health clinic for a review of his restrictions. (*See* Frazier Dep., Ex. 3 at ¶¶ 1, 2a, 2b; DX , Frazier Dep., Ex. 4 at ¶¶ 2, 3; DX Mullen Decl. at ¶ 8.) Defendant's Table of Penalties for Various Offenses provides that an employee may receive punishment ranging from a written reprimand to removal for a first-time offense of giving a false statement. (*See* PX 14.) An employer, "is entitled to rely on its good faith belief about falsity, concealment, and so forth." *EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (recognizing the necessity of an employer's investigating possible improper conduct at the workplace and legitimately choosing between conflicting versions of events and holding that employer was entitled to rely upon its good faith belief about falsity and concealment). Further, courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Florida, Inc.,* 196 F 3d 1354, 1361 (11th Cir. 1999). The fact that the belief of the employer is mistaken or later proven wrong does not establish discrimination. *See Smith v. P.A.P. Clinic*, 808 F.2d 1449, 1452-53 (11th Cir. 1987); *Moore v. Sears, Roebuck and Co.*, 683 F.2d 1321, 1323, n.4 (11th Cir. 1982). Because plaintiff has not established a prima facie case and has not rebutted defendant's legitimate nondiscriminatory reasons for its actions, defendant is entitled to judgment as a matter of law on

---

[15] With immaterial exceptions, only management's *conclusions* are contested. (Pl.'s Br. at 5, 14-15.)

plaintiff's claim of race discrimination.

*ii. Discrimination Based On Disability*

The ADA defines "disability," as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). In his Complaint, plaintiff alleged that he was disabled. (*See* Compl. at ¶ 19) ("Frazier is a disabled person within the meaning of the Act because the reoccurring pain due to his back injury limits not only his ability to perform his previous job, but also substantially limits his major life activities."). Plaintiff now appears to limit his claim to having a record of a disability. (*See* Pl.'s Br. at 20-21) ("Plaintiff can prove he is an individual with a handicap (or disability) using the second avenue afforded by the Rehabilitation Act: that the Plaintiff has a record of such impairment. . . . It is clear from [plaintiff's] medical records, dating back to 1988, that he was out of work for an extended period of time, that his restrictions were kept in place until 2001, and that he was being accommodated due to his permanent restrictions.").

An individual with a record of disability is a person who has "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). This part of the disability definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. *See id.* One purpose of this provision is to prevent discrimination against individuals because of a history of disability. *See id.* The other purpose is to ensure that individuals are not discriminated against because they have been misclassified as being disabled, such as a person who is erroneously classified as having a learning disability. *See id.* In order to

prevail on this prong of the ADA, a plaintiff must show that at some point in the past, the employer relied upon a record which either classified or misclassified that individual as having a physical or mental impairment that substantially limits a major life activity. *Phillips v. Wal-Mart Stores, Inc.*, 78 F. Supp. 2d 1274, 1286-87 (S.D. Ala. 1999).

As noted above, in order to establish a "record of disability,' the record at issue must show an impairment that substantially limits a major life activity. *See* 29 C.F.R. pt. 1630, App. § 1630.2(k) (1998) (plaintiff's burden of proving a record of disability is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment); *Coleman v. Georgia Power Co.,* 81 F. Supp. 2d 1365, 1370 n.7 (N.D. Ga. 2000) ("A physical impairment standing alone is not necessarily a disability as contemplated by the ADA. . . . The ADA requires that the impairment "substantially limit" one or more of the individual's "major life activities."). Major life activities include activities such as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). Further:

> The definitions of "major life activity" and "substantial limitation" are closely allied. "Major life activities" are the basic activities that average persons can perform with little or no difficulty, "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working ." "Substantially limits" means either the total inability or a severe restriction on the ability to perform a major life activity (in terms of condition, manner, or duration) as compared to the general population. The determination of whether an individual is "disabled" [therefore] depends on the effect the impairment has on the particular individual's life and not simply on the name or diagnosis of the impairment.

*Evans v. Pemco Aeroplex, Inc.,* No. CIVACCV96-S-2801-S, 1998 WL 1048470, at *7 (N.D. Ala. Feb. 23, 1998); see also 29 C.F.R. §§ 1630.2(i), 1630.2(j)(1). "The point is that the inability to perform a single, particular job does not constitute a substantial limitation in the major life

activity of working." *Mont-Ros v. City of West Miami,* 111 F. Supp. 2d 1338, 1354 (S.D. Fla. 2000) (citing 29 C.F.R. § 1630.2(j)(3)(i)).

Plaintiff alleges that, due to his back injury, he had the following restrictions: no lifting over twenty-five pounds; no lifting above chest level; no climbing, jumping, squatting, stooping, or bending at the knee or hip; and no sitting more than thirty minutes. (DX, Frazier Dep., Ex. 1 at Interrog. #2; *see also* PX 4; PX 7.) Further, the evidence shows that plaintiff was unable to do two tasks on one occasion -- sweeping and emptying trash cans. (DX, Frazier Dep. at 21-23 and Ex. 1 at Interrog. #3.) This is not sufficient to establish a record of having a disability. *See, e.g., Colwell v. Suffolk County Police Dept.*, 158 F.3d 635, 644-45 (2d Cir. 1998) (concluding that plaintiff's doctor's imposition of certain restrictions on his work schedule following his cerebral hemorrhage, including that he work days only and only indoors, that his overtime be limited to certain hours, that he not work late tours or rotating shifts, and that he avoid stress and confrontation was insufficient to establish that plaintiff was significantly restricted in his ability to work at a class or broad range of jobs, and thus, plaintiff was not "substantially limited" in major life activity of working); *Korzeniowski v. ABF Freight Systems, Inc.*, 38 F. Supp. 2d 688, 693 (N. D. Ill. 1999) (inability to work rotating shifts is not a disability where innumerable jobs are available that do not involve rotating shifts); *Amos v. Wheelabrator Coal Services, Inc.*, 47 F. Supp. 2d. 798, 803 (N. D. Texas 1998) (because plaintiff could do a wide variety of jobs, including heavy labor, and because only his ability to do rotating shift work was impaired, plaintiff was not a disabled person entitled to recover under the ADA); *Williams v. City of Charlotte, N.C.*, 899 F. Supp. 1484 (W. D. N. C. 1995) (rejecting plaintiff's claim that her "shift work sleep disorder" substantially interfered with her major life activity of working since the

sleep disorder did not impose a "significant barrier to employment" at numerous non-night shift jobs).

Plaintiff has failed to establish that he had an impairment that substantially limited a major life activity or that he had a record of such an impairment. Therefore, defendant is entitled to judgment as a matter of law on plaintiff's discrimination claims under the Rehabilitation Act.

Apart from the court's decision based upon plaintiff's failure to disclose his claims in bankruptcy, summary judgment for defendant is appropriate for the reasons set forth above.

## IV. CONCLUSION

For the foregoing reasons, the court is of the opinion that Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment is due to be granted as to all claims. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 5th of July, 2001.

Sharon Lovelace Blackburn

**SHARON LOVELACE BLACKBURN**
United States District Judge